**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|   |   |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRES MARTINEZ, a/k/a Castro Casimiro, a/k/a Joel Zequeira,, a/k/a Sacaida, CARLOS COLON-RIVERA, a/k/a Tigueron, CHRISTIAN GERMOSEN, a/k/a Christian and GERARDO VASSEUR ORTIZ, a/k/a Scarface, ET AL,<br>       Defendants, | **CRIMINAL ACTION**<br>**NO. 04-1685-CBS** |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER OF DETENTION**
**June 25, 2004**

**SWARTWOOD, M.J.**

I.  Nature of the Offense and the Government's Motion

On February 26, 2004, a Criminal Complaint was filed, charging multiple individuals, including Andres Martinez, a/k/a Castro Casimiro, a/k/a Joel Zequeira, a/k/a Scaida, ("Mr. Martinez"), Carlos Colon-Rivera, a/k/a Tigueron ("Mr. Hoffens")[1], Christian Germosen, a/k/a Christian ("Mr. Germosen") and Gerardo Vasseur Ortiz, a/k/a Scarface ("Mr. Ortiz")(collectively "Defendants"),

---

[1] The true name of the person identified in this Complaint as Carlos Colon-Rivera is Edgar Hoffens and I will refer to him in this Memorandum/Order by his true name ("Mr. Hoffens").

with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At these Defendants' initial appearance on May 3, 2004, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

After several continuances requested by the Defendants, a consolidated probable cause/detention hearing was held on June 23, 2004. At this hearing, Jean Drouin, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Defendants' counsel.

Following the probable cause/detention hearing, Messrs. Martinez and Germosen assented to an Order of Detention, but reserved their right to a further hearing on the issue of detention in the future; Mr. Ortiz requested and was granted a continuance to <u>July 2, 2004, at 11:00 a.m., in Courtroom 1, Fifth Floor, Donohue Federal Building, U.S. District Court, 595 Main Street, Worcester, Massachusetts</u> to complete the detention portion of his hearing; and Mr. Hoffens was released on conditions.

II. <u>Findings of Fact</u>

1. Special Agent Drouin is the case agent in connection with an investigation concerning the distribution of multiple kilograms of cocaine in the North Shore area of Massachusetts. This investigation commenced in January 2003 and concluded on May 1, 2004 with the arrest of more than twenty defendants. During this investigation, Special Agent Drouin and other law enforcement officials involved in this investigation, used informants, undercover agents, global positioning systems ("GPS") on four automobiles, surveillance of individuals and locations, Department of Motor Vehicles photographs for identification of individuals involved in this investigation, recorded and monitored controlled purchases of cocaine and Title III wire intercepts on approximately twenty-one telephones.

2. Primarily as a result of wire intercepts, law enforcement officials were alerted that a multi-kilogram load of cocaine was to be delivered in late April or early May 2004 to the organization which was the subject of this investigation. Following up on these wire intercepts, law enforcement officials arrested over twenty defendants which the Government alleges were involved in a conspiracy to distribute multiple kilograms of cocaine in the North Shore of Massachusetts. As a result of these arrests, approximately 50 kilograms of cocaine and a substantial amount of cash were seized.

3. <u>Mr. Hoffens</u>. Mr. Hoffens was intercepted on August 7, 2003, making arrangements with Mr. Rosales, a leader in this

alleged cocaine conspiracy, for the sale of specifically packaged cocaine in excess of three ounces.  Later that day, Mr. Hoffens was observed by law enforcement surveilling agents meeting with Mr. Rosales at 46 Wyman Street, Lynn, Massachusetts, as a follow-up to their earlier conversation for the sale of a specific amount of cocaine.  During this investigation, it was determined that 46 Wyman Street was used by this organization for stashing cocaine.  Mr. Hoffens was intercepted on at least two other occasions making arrangements with Mr. Rosales for the sale of cocaine.  Following two of these sales, Mr. Hoffens was stopped by police for an alleged motor vehicle offense in order to confirm his true identity which was done through a drivers license containing a picture and the name Carlos Colon-Rivera.  <u>Govt. Ex. 1</u>.

    4.   <u>Mr. Ortiz</u>.  On September 30, 2003, Mr. Ortiz was intercepted talking to Mr. Valentin Martinez about payment of money owed Mr. Martinez for cocaine previously delivered to Mr. Ortiz. Valentin Martinez instructed Mr. Ortiz to go to Bob's Carburetor /Bob's Auto Sales to make the payment.  Shortly after this conversation, law enforcement officials surveilling Bob's Carburetor/Bob's Auto Sales, observed Mr. Ortiz enter the business and a few minutes later leave the business.  Trooper James Bruce recognized Mr. Ortiz from a review of Mr. Ortiz's Massachusetts drivers license photograph which he then had in his possession.  On another occasion in October 2003, numerous calls were intercepted between Mr. Ortiz and Mr. Rosales.  During these calls, Messrs.

Ortiz and Rosales made arrangements to meet at Kelly's Roast Beef on Route 1, in Saugus, Massachusetts for the purpose of concluding a drug transaction. Mr. Rosales arrived first at Kelly's Roast Beef followed by Mr. Ortiz, who then called Mr. Rosales on the telephone and alerted him to suspected police surveillance. Messrs, Ortiz and Rosales then terminated the transaction and both left Kelly's Roast Beef. These calls between Mr. Rosales and Mr. Ortiz were not only intercepted but recorded. Id.

    5.   Mr. Germosen. Messrs. Jose Rosales and Kelvin Madera were intercepted hundreds of times on the telephone during the course of this investigation and have been identified as leaders of this alleged cocaine conspiracy. Mr. Germosen is Mr. Madera's brother. On October 24-25, 2003, multiple telephone calls were intercepted between Messrs. Madera and Rosales about money due from Mr. Madera to Mr. Rosales for a prior drug transaction; between Mr. Madera and Phillip Asaro about a balance owed by Mr. Asaro to Mr. Madera for a prior drug transaction and an amount that would be paid for a current delivery of a kilo of cocaine for $28,000; and calls between Mr. Madera and his brother, Mr. Germosen, in which Mr. Madera was instructing Mr. Germosen to collect money owed to Mr. Madera by Mr. Asaro, pay that money to Mr. Rosales and to deliver a kilogram of cocaine to Mr. Asaro and collect an additional $28,500 ($500 was to be paid to Mr. Germosen for this errand) for the kilo of cocaine. Although this multiple transaction involving drugs and money was temporarily interrupted,

it is clear from the telephone intercepts that the transaction was eventually consummated by Mr. Germosen collecting money from Mr. Asaro and paying that money to Mr. Rosales and delivering a kilo of cocaine to Mr. Asaro for payment of $28,500.  Mr. Germosen was identified by surveilling law enforcement officers by using his Massachusetts license photo and was observed on several occasions at 46 Wyman Street which, as indicated earlier, was a location where this organization stashed illegal drugs.  Id.

6.   Andres Martinez.   During the fall of 2003, Valentin Martinez, who according to intercepts, was the leader of this alleged cocaine conspiracy, left Massachusetts and returned to Mexico to care for his ailing mother.  During Valentin Martinez's absence, Messrs. Rosales and Madera were in charge.  At some point in the latter part of 2003 and early 2004, calls were intercepted between Messrs. Rosales and Madera and an individual in Mexico, who was identified as Zequeira or Sacaida and who obviously, from these intercepts, was a person who had previously made arrangements for the delivery of cocaine from Mexico to this organization on the North Shore of Massachusetts.  It also became clear during these intercepts, that Zequeira intended  to come to Massachusetts to take charge of this organization for the purpose of: importing multiple kilos of cocaine from Mexico; selling that cocaine in Massachusetts; and using the proceeds from the sales of multiple kilos of cocaine to pay for previous deliveries of cocaine to this organization from Mexico.  Law enforcement officials intercepted

telephone calls that alerted them to the fact that Zequeira would arrive at Logan Airport on a certain flight.  Mr. Madera went to the airport to meet Zequeira and the person who arrived at Logan Airport and was met by Mr. Madera was later identified, from both a picture on a Massachusetts license and photos in an immigration file, as being Andres Martinez.  As a result of law enforcement surveillance and wire intercepts, it became known to law enforcement officials involved in this investigation that a large load of cocaine was to be delivered to this organization in early May.  Law enforcement officials observed Andres Martinez in the area where multi-kilograms of cocaine were delivered to members of his organization at the Country Side Motel, in Peabody, Massachusetts.  Andres Martinez was intercepted making telephone arrangements for the delivery of this multi-kilograms load of cocaine and was present when the multi-kilograms of cocaine were seized by law enforcement officials.

### III.  Probable Cause

I find probable cause for the offense charged in this Complaint involving these four Defendants.  Mr. Hoffens was identified as a purchaser of cocaine from this drug organization; Mr. Ortiz was similarly identified as a purchaser of large amounts of cocaine from this organization; Mr. Germosen was identified as a worker in this organization, who collected money and delivered cocaine; and Mr. Andres Martinez has been identified as the person,

who by the beginning of 2004, was in charge of this organization.

### IV. Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Messrs. Germosen and Martinez be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Messrs. Germosen and Martinez be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Germosen and Martinez are detained and confined shall deliver Messrs. Germosen and Martinez to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/s/Charles B. Swartwood, III</u>
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE